OPINION
In this case, appellant, Paul Carlile, asks us to reverse a judgment of the Dayton Municipal Court finding him guilty of operating a vehicle under the influence of alcohol. Carlile was arrested as the result of a traffic stop initiated after the arresting officer saw Carlile's high beams flash on and off several times. Carlile argues that the officer lacked reasonable suspicion to support the stop and, therefore, the trial court erred by not suppressing the evidence that arose as a consequence of the stop. We find, however, that the police officer could reasonably have interpreted the flashing lights as a signal for assistance and that such a signal could justify an investigatory traffic stop. Accordingly, we affirm the trial court's judgment.
The factual history of this case begins some time about 8:30 p.m. on May 3, 1997. Carlile was, at that time, driving his girlfriend's car to her house on Meridian Street. It was just turning dusk as he drove south on Huffman Avenue and passed Officer Damon Castor of the Dayton Police Department, who was traveling in the opposite direction. As their vehicles approached and then passed each other, Officer Castor saw the high beams on Carlile's car flash on and off several times. The flashing lights drew the officer's attention and he turned his car around to follow Carlile.
Castor later testified that the flashing high beams indicated to him that the car might have been stolen. He explained to the court that, when a car-thief peels the steering column of a car in order to start it, the process sometimes causes the high beams to remain on. Castor also testified that, if the car was not stolen, the driver might have been signaling for police assistance with his bright lights. The officer stated that he had both possibilities in mind when he initiated the traffic stop. He conceded, however, that he had no other indication that the car was stolen. He also conceded that he saw only one person in the car, the driver, and that the driver made no other gestures to get his attention.
Castor caught up with Carlile after he had already turned onto Meridian Street and was pulling in front of his girlfriend's apartment. When the officer activated his overhead lights, Carlile pulled over to the right, and drove onto the curb in the process. After Officer Castor got out of his patrol car and approached Carlile's vehicle, he immediately noticed a strong odor of alcohol coming from within. When he asked Carlile for his driver's license, the latter fumbled, eventually dropping the license out the window. Officer Castor also noticed that Carlile's eyes were glassy, his movements were sluggish, and his speech was slurred. Because of these signs of intoxication, Castor initiated a field sobriety test. Carlile failed the test and was arrested. Later he consented to a blood-alcohol test, which showed a concentration in excess of the legal limit. He was charged with driving under the influence in violation of Dayton Revised Code of General Ordinances 71.12(A) and a number of traffic misdemeanors.
On May 8, 1997, Carlile pleaded not guilty to all the charges against him. On May 27, he filed a motion to suppress all of the evidence arising from his traffic stop, for which motion a hearing was held on August 6. On March 20, 1998, the trial court overruled the motion. Then, on June 16, Carlile pleaded no contest to the DUI charge and all the remaining charges were withdrawn. He was sentenced to one hundred eighty days in jail, with one hundred seventy-seven suspended, and a two hundred dollar fine. He now timely appeals from that conviction.
In a single assignment of error, Carlile asserts:
 THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE WHICH WAS THE PRODUCT OF AN ILLEGAL STOP.
The stop of an automobile by police constitutes a "seizure" under the Fourth Amendment. Berkemer v. McCarty
(1984), 468 U.S. 420, 436-437, 104 S.Ct. 3138, 3148,82 L.Ed.2d 317. The imposition may be justified, however, when a police officer's "observations `lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime." Id. at 439, quoting United States v. Brignoni-Ponce (1975), 422 U.S. 873,881, 95 S.Ct. 2574, 45 L.Ed.2d 607. The rationale underlying the constitutionality of the stop is the same as that supporting the "stop and frisk" doctrine first announced inTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. See Berkemer, 468 U.S. at 439-440.
The trial court found that Officer Castor had sufficient reason to stop Carlile because of the flashing high beams. The court found that the blinking lights could have indicated that the car was stolen. In addition, the court noted that the driver could have been trying to catch the officer's attention. Thus, based on the totality of the circumstances, the court found reasonable cause to make the stop. Carlile argues that neither of these explanations indicates a reasonable suspicion that criminal activity was occurring.
On a number of occasions, Ohio courts have had to consider whether a motorist's improper use of high-beams could give adequate grounds for a traffic stop. In State v. Hinton (Mar. 16, 1992), Clark App. No. 2833, unreported, our court held that such a stop may be justified if the driver has violated R.C. 4513.03. That statute provides:
 (A) Whenever the driver of a vehicle approaches an oncoming vehicle, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver.
Courts have often upheld traffic stops on this ground. E.g.,City of Westlake v. Kaplysh (Jan. 16, 1997), Cuyahoga App. No. 70872, unreported; State v. Adams (Oct. 25, 1995), Lawrence App. No. 94CA35, unreported; City of W. Carrolltonv. Hamilton (Feb. 16, 1994), Montgomery App. No. 14181, unreported. On the other hand, the Ross County Court of Appeals has held that a "momentary flick onto high beam followed immediately by a return to low beam cannot be elevated to a violation of R.C. 4513.15," thereby justifying a traffic stop. State v. Woods (1993), 86 Ohio App.3d 423,426. To our knowledge, no court has ever addressed whether flashing high beams on and off can constitute a violation of R.C. 4513.15.
In any event, because it had not turned dark outside at the time of the incident in this case, it is unlikely that Carlile's high beams could have "projected into the eyes" of oncoming drivers so as to violate the statute. Indeed, the state has not argued violation of the statute as a basis for the stop. Thus, the usual reason supporting traffic stops in cases involving the use of high beams will not apply in the case before us.
We turn then to the first rationale adopted by the trial court. The trial court concluded that inappropriate use of bright lights can give rise to a reasonable inference that a car is stolen. Our appellate court has affirmed the constitutionality of a traffic stop based on just such a rationale in State v. Barnes
(Apr. 5, 1996), Montgomery App. Nos. 15159, 15160, unreported, at 4. Nevertheless, we hesitate to do so in the instant case.
In Barnes, there were other indications besides the use of high beams that the car might have been stolen. The defendant's car in Barnes had no front license plate, moved suspiciously about a gas station parking lot, was located in a high-crime area at 4:40 a.m., and kept its high beams on both when it was in the parking lot and when it drove back onto the public street. Id. at 4. Here, in contrast, the only indication that the car was stolen was the flashing of the bright lights several times, on and off. We are unable to find that a reasonable suspicion of the vehicle being stolen could have existed upon such a thin support. Indeed, we are not certain that flashing lights, as were observed in this case, are consistent with the "hot-wired" bright-lights that supported our decision in Barnes, where it was explained that forced entry into the steering column often makes it "impossible to dim the headlights." Id.
Accordingly, we turn to other rationale adopted by the trial court. The trial court noted that the flashing lights could have been a signal for Officer Castor's attention. The state argues that, in making a traffic stop based on such a signal, Castor was exercising his function as a "community caretaker." Thus, the state maintains, the stop was constitutionally reasonable.
The term "community caretaker" derives from the opinion of the United States Supreme Court in Cady v. Dumbrowski (1973),413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706. In that opinion, the Court stated:
 Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.
With this observation in Cady, the Supreme Court recognized that there may be cause for police-citizen contact even when suspicion of criminal activity is lacking.
Following this cue, our court in State v. Thayer (Aug. 31, 1990), Clark App. No. 2667, unreported, at 3, held that service as a community caretaker may provide a police officer with adequate justification to make a traffic stop. In Thayer, we concluded that "[l]aw enforcement officers may legitimately stop cars for purposes other than criminal investigation." Id. We affirmed the constitutionality of the stop in that case because the police officer "could have made an objectively reasonable decision to stop Thayer's car to determine whether there was any problem requiring assistance." Id.; accord State v. Douglas
(April 22, 1998), Summit App. No. 18642, unreported, at 3.
Reasoning from different authority, we reached a similar result in State v. Stubbs (Oct. 2, 1998), Montgomery App. No. 16907, unreported, at 2-3. Relying on the emergency doctrine ofMincey v. Arizona (1978), 437 U.S. 385, 98 S.Ct. 2408,57 L.Ed.2d 290, we concluded that a police officer may effect a traffic stop if he has "reasonable cause to believe that a person is in need of immediate assistance." Thus, in Stubbs, we upheld the constitutionality of a traffic stop where the police officer suspected that the driver had just placed a 911 call. Id. at 3.
Applying this logic to the case before us, we agree with the trial court that the traffic stop of Carlile was justified. Flashing one's high beams is a common form of signal from one driver to another. Thus, Officer Castor's interpretation of that signal as an attempt by a citizen to gain the attention of a police officer was objectively reasonable. A traffic stop is a relatively inoffensive intrusion upon constitutionally protected liberties. See Berkemer, 468 U.S. at 439-440. Under the circumstances, it was not unreasonable for Officer Castor to make such an intrusion until he could be certain that no person within the car was in need of police assistance.
Carlile argues that any question whether someone within the car was in need should have been resolved when Castor saw only one occupant. We do not agree. Every question would not have been resolved until the officer had the opportunity to approach the vehicle and speak to the driver. From that point forward, Castor had reasonable cause to believe that Carlile had been driving under the influence.
For the foregoing reasons, we overrule Carlile's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
WOLFF, J., and KERNS, J., concur.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).